## CIRCUIT COURT OF FAIRFAX COUNTY

Adams-Tate

v.

Continental Petroleum
and Energy Co., Ltd., et al.

### Case No. (Chancery) 131489

BY JUDGE F. BRUCE BACH

February 21, 1992

This cause is before the Court upon the demurrers of defendants Continental Petroleum & Energy Company, Ltd., William T. Buchanan, Capitol Fuel Company, Inc., and William Murphy. Oral argument was heard on February 7, 1992, and the Court took the demurrers under advisement.

A demurrer admits the truth of all facts expressly alleged. *Duggins v. Adams*, 234 Va. 221 (1987). The facts in the second amended bill of complaint are sufficient to state a violation of the Uniform Commercial Code — Bulk Transfers, Title 8.6 of the Code of Virginia. The issues raised by counsel for defendants during oral argument indicate that the cause of action is in reality a breach of contract against Discount who has filed for bankruptcy. Defendants allege the facts stated in the bill of complaint are not based in fact, but, on a demurrer, the Court cannot go beyond the four corners of the bill of complaint. The demurrers to Count One are denied.

Count Two states that Buchanan, Continental, and Discount hired Adams-Tate to find a purchaser of Discount's assets. Adams-Tate located Capitol and Murphy. The assets were transferred by Buchanan, Continental, and Discount to Capitol and Murphy on or about October 30, 1990. Subsequent to the transfer, Discount filed for bankruptcy. The conveyance was concealed by Buchanan, Continental, Discount, Capitol, and Murphy until November 30, 1990, with the intent to

hinder, delay, and defraud Adams-Tate. As in the first amended bill of complaint, there are not enough facts to support a cause of action for fraudulent conveyance. The demurrers to Count Two are sustained without leave to amend.

February 9, 1993

This case is before the Court on Capitol Fuel Company, Inc., and William Murphy's ("Respondents") Motion for Summary Judgment. Continental Petroleum & Energy Company, Ltd., and William T. Buchanan ("Respondents") concurred in the Motion for Summary Judgment. Oral argument was heard on January 15, 1993. The Court took the motion under advisement.

Adams-Tate and William Buchanan entered into an agreement on March 27, 1990, in which Adams-Tate agreed to find a purchaser for Discount Oil Sales. Section 4, Success Fee, provided:

> In the event of any sale during the term of this Agreement to a purchaser . . . Client agrees to pay ATI at closing a fee based upon total consideration received or to be received (including liabilities assumed and other economic benefits realized) by Client or its shareholders, directly or indirectly arising from or connected to the sale. This fee shall be equal to ten percent (10%) of the total consideration. The fee as calculated above shall be paid at closing in cash or by check.

Respondents argue that Adams-Tate only became a creditor as a result of the transfer of assets and was not a creditor entitled to notice under Code § 8.6–109. Code § 8.6–109 protects creditors "holding claims based on transactions or events occurring before the bulk transfer . . . ." Adams-Tate, under Section 4 of the March 27, 1990, agreement, was entitled to its ten percent fee at closing. Adams-Tate became a creditor of Discount upon locating a purchaser of Discount's assets. The Motion for Summary Judgment on this basis is denied.

The second ground for summary judgment is that the assets transferred were not covered under the Uniform Commercial Code — Bulk Transfers. Respondents assert that no materials, supplies, merchandise or other inventory was transferred by Discount. Both sides rely on the Sale and Purchase of Assets Agreement dated October 26, 1990. Listed as assets to be transferred are: customer lists, supplier rights, business records, tangible and intangible assets, service parts inventory and computer training. Adams-Tate's Opposition states that the service

parts inventory constitute inventory and bring the transfer of assets under the Uniform Commercial Code — Bulk Transfers.

Code § 8.6–102(2) states that "a transfer of a substantial part of the equipment (§ 8.9–109) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise." Code § 8.9–109 classifies goods as inventory "if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them . . . ." The example given in the Official Comment to Code § 8.9–109 of inventory to be furnished under contracts of service is a car rental agency. The cars leased under a contract of service would be classified as inventory.

The Motion for Summary Judgment is denied on the basis that the assets transferred were not inventory. Service parts inventory would constitute inventory, if transferred under the Sale and Purchase of Assets Agreement dated October 26, 1990, and if used under contracts of service.

August 31, 1993

By Judge Thomas S. Kenny

This case involves a creditor's claim against certain goods sold by the debtor in a bulk sale, in which the notice to creditors required by § 8.6–105 of the Code of Virginia was not given. At the bench trial in the case, I dismissed the creditor's claim as having been discharged in bankruptcy. The creditor then moved to reconsider that ruling. This opinion confirms my earlier ruling against the creditor.

*Factual Background*

The factual background of this case is provided by the pleadings in the file and by the generally uncontradicted statements of counsel in their opening statements and arguments. Taken in the light most favorable to the plaintiff, they are [as follows].

Adams-Tate ("AT") entered into a contract with Discount Oil Sales to act as a broker in the sale of Discount's business, for which AT would be paid a substantial commission.

AT in fact found a purchaser for the business, and the sale was ultimately consummated. There is some disagreement between the parties as to whether the Bulk Sales provisions of the Uniform Commer-

cial Code applied to this sale by Discount.[1] However, for the sake of this motion, I will consider all facts in the light most favorable to AT and assume that those provisions do apply.

At the parties' request, AT was not actively involved in the final negotiations or closing of the sale and, accordingly, did not know when the closing occurred. Nevertheless, AT is deemed to have fully performed its contract with Discount and was entitled to the commission.

Some time after the closing of the sale and receipt of the proceeds, Discount transferred almost all of the proceeds to a sister corporation, Continental Petroleum & Energy Co., Inc.,[2] in satisfaction of certain open accounts between the companies. There has been no suggestion that the debt from Discount to Continental was not bona fide or was not incurred in the ordinary course of business.

As a result of the transfer to Continental, Discount was left with no assets to satisfy its debt to AT. Until that transfer, however, it had ample cash to do so.

More than four months after the proceeds were paid over to Continental, Discount declared bankruptcy, listing AT as an unsecured creditor. Neither AT nor the trustee in bankruptcy made any effort to recover for the bankrupt estate the assets transferred to Capitol or to Continental, and AT recovered nothing in the bankruptcy, its debt being completely discharged.

AT then instituted this suit, seeking to set aside the original transfer because the ten-day notice to creditors was not given as required by the bulk sales provisions of the U.C.C. Capitol was named as the transferee, and Continental and Buchanan were apparently included as "co-transferors" and, in Continental's case, as ultimate recipient of the proceeds of the bulk transfer.

---

[1] The dispute here is whether the sale in fact involved "inventory" of Discount, as required by § 8.6–102. A further argument is that AT was not a "creditor" of Discount at the time of the sale because it did not earn its commission until the sale was completed. Thus, at the time of the notice to creditors required by the U.C.C. bulk sales provisions (ten days before the bulk transfer), AT was not a creditor. I have not reached either issue in this case since I have assumed that the bulk sales provisions apply, and I have resolved it against AT on other grounds.

[2] Substantially all of the stock of Discount and of Continental is owned by the same individual, William Buchanan.

### Original Ruling

AT relies on § 8.6–105 of the Code which provides, in pertinent part, that:

> any bulk transfer subject to this title . . . is ineffective against any creditor of the transferor unless at least ten days before he takes possession of the goods or pays for them, whichever happens first, the transferee gives notice of the transfer in the manner and to the persons hereafter provided.

I ruled from the bench that the obvious purpose of this statute was to put the creditor in the same position vis-a-vis the transferred assets as it would have been absent the transfer. In other words, AT could have moved against those assets in Capitol's hands, for example, to enforce a judgment it might have gotten against Discount, or to foreclose any lien it might have on the goods. However, since Discount's debt to AT had been extinguished by its discharge in bankruptcy, AT no longer had any interest in the goods to protect or to assert. Accordingly, I dismissed the claim.

### Motion to Reconsider

AT has asked me to reconsider that ruling and has cited the case of *Stone's Pharmacy v. Pharmacy Accounting Mgt.*, 875 F.2d 665 (8th Cir. 1989), for the proposition that the mere bankruptcy of a debtor does not cut off a creditor's rights under the U.C.C. bulk transfer provisions. Although defendants vigorously contend that *Stone* is an aberrational case that reflects a distinctly minority view, I will accept that the case stands for the proposition advanced by AT.

Unfortunately for AT, that proposition does not help it. The critical fact working against AT here is not that Discount declared bankruptcy, but that it was discharged. In *Stone*, the bankruptcy proceedings had not concluded, and no discharge had yet occurred. The creditor was not allowed to assert an independent claim (outside of the bankruptcy proceeding) on its own behalf against the transferred assets; it was merely allowed to proceed with getting a determination whether a violative transfer had occurred.

> If the district court finds that a violation of the Bulk Transfers Act did occur, it should order a gathering of the assets (or their value) *to be held until the rights of PAM's creditors,*

*including Stone's Pharmacy, have been determined in the ap-*
*propriate forum.*

*Stone's Pharmacy*, 875 F.2d at 667. (Emphasis added.) In other words, any assets transferred in violation of the bulk sales provisions of the U.C.C. would, under *Stone*, simply be returned into the bankruptcy estate to be divided among all of the bankrupt's creditors. It is the bankruptcy court, not this court, that would apportion those assets, and once those assets had been distributed, any remaining balance on the indebtedness would be discharged.

In short, AT's attack on this transfer comes too late and in the wrong forum. Nothing in any of the authorities cited to me by either side indicates that a creditor's complaint about lack of notice of a bulk sale gives rise to an independent cause of action against the transferee that will survive the discharge in bankruptcy of the transferor's debt to the creditor. I decline the implied invitation to create such a cause of action on my own.

The motion to reconsider is denied.